# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **MOZIDO, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 1:16-cv-00675-LY** |
| **v.** | § | |
| | § | |
| **STEVEN G. PAPERMASTER, BRIAN K.** | § | |
| **MAGIERSKI, APPCONOMY, INC.,** | § | |
| **APPCONOMY-US INC., NEUNANO** | § | |
| **CHINA CORP., BRIAN K. MAGIERSKI,** | § | |
| **IN HIS CAPACITY AS TRUSTEE FOR** | § | |
| **THE MAGIERSKI FAMILY TRUST,** | § | |
| **MOLI CAPITAL LLC (f/k/a 10X** | § | |
| **CAPITAL LLC), and GAIL** | § | |
| **PAPERMASTER, IN HER CAPACITY AS** | § | |
| **TRUSTEE FOR THE STEVEN G.** | § | |
| **PAPERMASTER 2014 TRUST,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 12(b)(1) AND RULE 12(b)(6) MOTION TO DISMISS THE AMENDED COMPLAINT AND BRIEF IN SUPPORT

Kasowitz, Benson, Torres
& Friedman LLP
700 Louisiana Street, Suite 2200
Houston, Texas 77002-2730
Telephone: (713) 220-8800
Fax: (713) 222-0843
*Attorneys for Plaintiff Mozido, Inc.*

## <u>Table of Contents</u>

**Page**

**Table of Authorities** ...................................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................. 1

**STATEMENT OF FACTS** ......................................................................................... 2

    A.    Mozido Seeks Entry into the Chinese Market ........................................... 2

    B.    Defendants Lure Mozido with Lucrative Chinese Contracts................................ 2

    C.    Appconomy Snares Mozido in its Trap and Induces the $6.5 Million Loan ......... 3

    D.    Appconomy's Elaborate and Incredible Fraud is Exposed .............................. 4

    E.    Appconomy Defaults, Refuses to Provide Collateral, and Mozido Files Suit ........................................................................................................ 4

**ARGUMENT** ............................................................................................................... 5

I.    Defendants' Rule 12(b)(1) Motion to Dismiss Should be Denied.............................. 5

    A.    Defendants' Attempted Extension of RICO's Ripeness  Doctrine Should Be Rejected ....................................................................................... 5

    B.    Mozido Has Properly Alleged Damages.................................................... 6

II.    Defendants' Rule 12(b)(6) Motion to Dismiss Should be Denied................................. 8

    A.    Mozido Has Properly Alleged its Loss Was Caused by Defendants' Material Misrepresentations and the Revelation of Defendants' Fraud ................ 9

        1.    Mozido Suffered a Loss ................................................................ 9

        2.    Mozido's Loss Was Caused by Defendants............................................. 10

        3.    The Stock of a Privately-Held Company is at Issue ................................ 11

    B.    Mozido Has Properly Pleaded Due Diligence .................................................. 15

    C.    Mozido Has Properly Pleaded Securities Fraud Against All Defendants............. 17

**CONCLUSION** ............................................................................................................. 20

i

## Table of Authorities

**Page(s)**

**Cases**

*Am. Home Mortg. Corp. v. UM Sec. Corp.*,
    2007 WL 1074837 (S.D.N.Y. Apr. 9, 2007).............................................................5

*Amusement Indus., Inc. v. Stern*,
    693 F. Supp. 2d 327 (S.D.N.Y. 2010)...................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................8

*Aubrey v. Weihert*,
    2016 U.S. Dist. LEXIS 112570 (N.D. Tex. July 28, 2016) ....................................6

*Baytree of Inverrary Realty Partners v. City of Lauderhill*,
    873 F.2d 1407 (11th Cir. 1989) ..............................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................8, 11

*Borneo Energy Sendirian Berhad v. Sustainable Power Corp.*,
    646 F. Supp. 2d 860 (S.D. Tex. 2009) ....................................................................7

*Campbell v. Conroy*,
    55 F. Supp. 3d 750 (W.D. Pa. 2014).......................................................................7

*Carlucci v. Han*,
    907 F. Supp. 2d 709 (E.D. Va. 2012) .............................................................. *passim*

*Castellano v. Young & Rubicam, Inc.*,
    257 F.3d 171 (2d Cir. 2001)...................................................................................14

*Daniels v. Thaler*,
    2009 U.S. Dist. LEXIS 121193 (S.D. Tex. Dec. 30, 2009) ....................................6

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)....................................................................................5

*Dupuy v. Dupuy*,
    551 F.2d 1005 (5th Cir. 1977) .........................................................................15, 17

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..............................................................................9, 10, 11, 12

*Eclectic Prop. East, LLC v. Marcus & Millichap Co.*,
  2011 WL 1375164 (N.D. Cal. Apr. 12, 2011) ........................................................7

*Energytec, Inc. v. Proctor*,
  516 F. Supp. 2d 660 (N.D. Tex. 2007) ..................................................................7

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1975)................................................................................................6

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994)............................................................................1, 5, 7

*George v. Cal. Infrastructure & Econ. Dev. Bank*,
  2011 WL 837152 (E.D. Cal. Mar. 9, 2011) ...........................................................7

*Giger v. Ahmann*,
  2010 WL 2491025 (N.D. Ill. June 15, 2010) ..................................................6, 7, 8

*Goldfine v. Sichenzia*,
  118 F. Supp. 2d 392 (S.D.N.Y. 2000)....................................................................5

*Greenwald v. Integrated Energy, Inc.*,
  102 F.R.D. 65 (S.D. Tex. 1984) ...........................................................................17

*Hodges v. H & R Investments, Ltd.*,
  668 F. Supp. 545 (N.D. Miss. 1987) ....................................................................16

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ...........................................................................8, 16

*Lee v. Active Power, Inc.*,
  39 F. Supp. 3d 876 (W.D. Tex. 2014)...................................................................18

*Limpos, S.A. v. Aronsno*,
  1998 WL 846781 (E.D.N.Y Sept. 15, 1998) ..........................................................7

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) .................................................................................9

*Longden v. Sunderman*,
  737 F. Supp. 968 (N.D. Tex. 1990) ......................................................................15

*Lormand v. US Unwired*,
  565 F.3d 228 (5th Cir. 2009) ...........................................................9, 10, 11, 13

*McCabe v. Ernst & Young, LLP*,
  494 F.3d 418 (3rd Cir. 2007) ...............................................................................12

*Motorola Credit Corp. v. Uzan*,
  322 F.3d 130 (2d Cir. 2003) ..................................................................................5

*New York Islanders Hockey Club, LLP v. Comerica Bank-Texas*,
  71 F. Supp. 2d 108 (E.D.N.Y. 1999) ...................................................................14

*Price v. Pinnacle Brands*,
  1997 U.S. Dist. LEXIS 11698 (N.D. Tex. Apr. 2, 1997) .......................................5

*Siebel v. Scott*,
  725 F.2d 995 (5th Cir. 1984) ...............................................................................15

*Southland Secs. Corp. v. INSpire Ins. Sols. Inc.*,
  365 F.3d 353 (5th Cir. 2004) ...................................................................17, 18, 19

*Stephenson v. Paine Webber Jackson & Curtis, Inc.*,
  839 F.2d 1095 (5th Cir. 1988) ..........................................................................9, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..............................................................................................6

*Trust Co. of La. v. N.N.P., Inc.*,
  104 F.3d 1478 (5th Cir. 1997) .............................................................................15

*United States v. O'Hagan*,
  521 U.S. 642 (1997) ..............................................................................................6

*Vantage Trailers, Inc. v. Beall Corp.*,
  2008 U.S. Dist. LEXIS 86895 (S.D. Tex. Oct. 27, 2008) ......................................8

**Statutes**

Uniform Commercial Code § 9.615(d), DEL. CODE ANN. TIT. 6, § 9-615(d) ................................8

**Other Authorities**

Rule 8(a)(2) ........................................................................................................13

Rule 9(b) .............................................................................................................13

Rule 10b-5 ...................................................................................................*passim*

Rule 12(b)(1), (6), (c) ...................................................................................*passim*

Plaintiff Mozido, Inc. ("Mozido") respectfully submits this response and brief in support of its opposition to defendants' Steven G. Papermaster ("Papermaster"), Brian K. Magierski ("Magierski"), Appconomy, Inc. ("App-Inc."), Appconomy-US, Inc. ("App-US"), Neunano China Corp. ("Neunano"), Brian K. Magierski in his capacity as Trustee for the Magierski Family Trust ("Magierski Trust"), MoLi Capital, LLC f/k/a 10X Capital LLC ("10X Capital"), and Gail Papermaster in her capacity as Trustee for the Steven G. Papermaster 2014 Trust ("Papermaster Trust") (collectively "defendants") motion to dismiss ("Mot.," Dkt. No. 11).

## PRELIMINARY STATEMENT

Mozido lost $6.5 million dollars as a result of defendants' elaborate fraudulent scheme which included grossly misrepresenting Appconomy's value and financial performance, impersonating a prominent Chinese businessman and forging his name to a comfort letter and legal documents, and claiming that they had contractual relationships with Chinese businesses that would inure to Mozido's benefit when in fact they had no such meaningful relationships. To secure their $6.5 million payoff, defendants pledged valueless shares of Appconomy which, to this day, they refuse to deliver to Mozido. Left with no other recourse, Mozido filed this action. Mozido's claims are properly pleaded, and defendants' motion to dismiss should be denied in its entirety.

*First*, defendants' attempt to secure a dismissal of Mozido's securities fraud claim under Rule 12(b)(1) based on the ripeness doctrine fails because it is based on a condition to suit under RICO which has never been applied to a securities fraud claim and which defendants ensured Mozido could not satisfy by refusing to provide Mozido with the collateral that they claim it was required to sell before bringing suit. Mozido has alleged facts which establish that its claim is ripe, namely that it has suffered damages in excess of $6.5 million, that defendants failed and refused to deliver the securities at issue to Mozido and that the securities were nevertheless worthless. Defendants' Rule 12(b)(1) motion to dismiss should be denied.

*Second*, defendants' request for dismissal under Rule 12(b)(6) also fails because, contrary to defendants' arguments, Mozido has properly pled loss causation, due diligence, and has pled a securities fraud claim against each defendant.  Specifically, Mozido unequivocally pleaded that its losses were caused by defendants' misrepresentations, that it retained prominent national law firms to assist it in conducting due diligence which included a review of numerous Appconomy corporate documents before the $6.5 million loan was funded, and that all of the defendants are liable to Mozido for Papermaster's and Magierski's misrepresentations through the doctrines of respondeat superior and vice principal.

Because Mozido's securities fraud claim against defendants, as pleaded in the Amended Complaint ("Am. Compl.," Dkt. No. 9), is facially plausible, defendants' motion to dismiss should be denied.

## STATEMENT OF FACTS

### A.   Mozido Seeks Entry into the Chinese Market

Mozido is a global leader in the mobile payments space.  Its primary mission includes providing the roughly two billion people worldwide without bank accounts – but who do have mobile phones – with affordable access to financial services through its "mobile wallet" software. (Am. Compl. ¶ 21).  Since its founding, Mozido has expanded its operations from the United States to around the world.  (*Id.* ¶ 22).  In 2014, Mozido sought to expand its reach into China – a technology-forward country with roughly 20% of the world's population – and by February 2014, it formally entered the market by partnering with Chinese payment processor PayEase.  (*Id.*).

### B.   Defendants Lure Mozido with Lucrative Chinese Contracts

Founded in 2010 by Papermaster and Magierski, Appconomy (which consists of App-Inc., App-US, and Neunano) holds itself out as a pioneer in the future of mobile retailing in China.  (*Id.* ¶ 24).  Shortly after Mozido entered the Chinese market, Papermaster approached Mozido to

propose a potential merger with Appconomy. (*Id*. ¶ 29). On July 14, 2014, Papermaster met with Mike Love, Mozido's CEO, and represented that Alibaba, the world's largest online and mobile marketplace, attempted to acquire Appconomy for $1 billion, an offer rejected by Appconomy. (*Id.*). Two weeks later, Papermaster made the same representation to Michael Liberty, Mozido's founder. (*Id.* ¶ 32). Papermaster also touted an alleged relationship with Neusoft, China's largest software and IT company, and that through a partnership with Neusoft's founder Dr. Jiren Liu, Appconomy had obtained an exclusive contract with the largest owner of shopping malls in China, had exclusive contracts with the two largest Chinese telecommunications companies, and as a result of these relationships, Papermaster could – and would – procure roughly 100 million Chinese customers for Mozido. (*Id.*). These same representations were repeated over the course of 2014.

### C.      Appconomy Snares Mozido in its Trap and Induces the $6.5 Million Loan

Seeing the apparent value in Appconomy based upon Papermaster and Magierski's repeated representations, Mozido sought to capitalize on the proposed merger and retained counsel in July 2014 to conduct due diligence into Appconomy. (*Id.* ¶ 39). Following the initial July meetings, Papermaster and Magierski repeatedly called and pressured Liberty to ask Mozido to loan Appconomy $6.5 million which Appconomy would use to expand its business in China while the merger acquisition was being negotiated. (*Id.* ¶¶ 37, 41). After reviewing extensive corporate documentation populated by Appconomy in a virtual data room, and with the assistance of prominent national law firms, Mozido agreed to the loan. (*Id.* ¶¶ 43-44). The loan was secured by shares in Appconomy, which Papermaster and Magierski, on behalf of the pledgors, represented was more than adequate to collateralize the loan's entire value. (*Id.* ¶ 46). By December 16, 2014, Mozido funded the $6.5 million loan. (*Id.* ¶ 47).

### D. **Appconomy's Elaborate and Incredible Fraud is Exposed**

Shortly thereafter, in an effort to extract more money from Mozido, Papermaster arranged a conference call between Michael Liberty, Robert Turner (Mozido's executive chairman of the board), Mike Love, one of Mozido's largest investors, and a person who Papermaster claimed was Neusoft Chairman and CEO, Dr. Jiren Liu.  (*Id.* ¶ 49).   During the call, the purported Dr. Liu provided assurances regarding Neusoft's intent to do business with Mozido in the future and agreed to provide Mozido with an exclusive contract in China.  (*Id.*).   Later that same day, Mozido received a comfort letter, allegedly from Dr. Liu, confirming Neusoft's commitment to exclusively working with Mozido in China.  (*Id.* ¶ 50).   However, as time passed without any significant progress towards the promised Mozido-Neusoft relationship, Mozido began to question the veracity of defendants' representations and went to China on a fact finding mission.  (*Id.* ¶ 51).   There, Mozido discovered that Papermaster and Magierski lied about the extent of Appconomy's Chinese business relationships.  (*Id.*).   Shortly thereafter, Liberty learned from Neusoft's chief legal officer that the Neusoft comfort letter, phone call, and agreement to formalize Neusoft's relationship with Mozido were all part of defendants' elaborate scheme to defraud Mozido into paying them substantial sums of money.  (*Id.* ¶¶ 51-54).   The letter was forged and defendants hired an imposter to participate in the conference call as Dr. Liu.  (*Id.*).

### E. **Appconomy Defaults, Refuses to Provide Collateral, and Mozido Files Suit**

Appconomy defaulted on the loan agreement by failing to perform any of the obligations thereunder, including timely payment of principal and interest when the loan matured on November 1, 2015.  (*Id.* ¶¶ 61-65).   Further, despite repeated written demands for the pledged Appconomy securities, the pledgors refused to deliver the collateral to Mozido.  (*Id.* ¶ 64).   Because of Appconomy's default and the pledgors' refusal to deliver the collateral, this litigation ensued.

## ARGUMENT

### I.    DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS SHOULD BE DENIED

Defendants' attempt to deny this Court's subject matter jurisdiction over Mozido's 10b-5 claim on the basis of ripeness is baseless and, accordingly, its Rule 12(b)(1) motion should be denied.  As demonstrated by their inability to identify a single case or provision of 10b-5 requiring it, defendants lack a legal basis for their argument that Mozido was required to foreclose on the pledged securities as a prerequisite to bringing a 10b-5 claim.  In any event, defendants' repeated failure to deliver the collateral has prevented Mozido from selling the pledged securities and bars defendants from relying on their newly created condition as a basis for dismissal in this action.

#### A.    Defendants' Attempted Extension of RICO's Ripeness Doctrine Should Be Rejected

Defendants' attempt to dismiss Mozido's 10b-5 claim (Mot. at 5) based on case law interpreting RICO, which is not at issue here, should be denied.

First, defendants have no legal basis for extending case law interpreting RICO[1] to this securities fraud case and defendants' argument *(Id.* at 6) that there is a dearth of case law addressing 10b-5 claims similar to Mozido's claim is not a basis for an unprecedented extension of case law interpreting one federal statute to another federal statute.  "RICO standing is a more rigorous matter than standing under Article III," *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) and requires clear and definite damages before allowing a plaintiff to treble its alleged damages.  *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 398-99 (S.D.N.Y. 2000); *see Price v. Pinnacle Brands*, 1997 U.S. Dist. LEXIS 11698, at *5-7 (N.D. Tex. Apr. 2, 1997).  Because

---

[1] Defendants rely on *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994), *Motorola Credit Corp. v. Uzan*, 322 F.3d 130 (2d Cir. 2003), and *Am. Home Mortg. Corp. v. UM Sec. Corp.*, 2007 WL 1074837 (S.D.N.Y. Apr. 9, 2007) – all cases in the RICO context – in support of their ripeness argument.  (Mot. at 6-7).

there is no precedential basis for this Court to extend defendants' ripeness[2] argument to 10b-5, this Court should deny defendants' motion to dismiss for lack of subject matter jurisdiction.

Second, defendants' request for an extension of RICO's ripeness doctrine[3] to 10b-5 runs afoul of the public policy underlying the securities fraud statutes and the implied private cause of action, which seek to maintain public confidence in the marketplace by insuring honest securities markets and deterring fraud. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007) citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005); *United States v. O'Hagan*, 521 U.S. 642, 658 (1997); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1975). Endorsing defendants' argument would fail to protect defrauded investors and maintain public confidence in the marketplace, especially given that defendants have refused to deliver to Mozido the pledged collateral despite Mozido's repeated demands. (*See* Am. Compl. ¶ 62). Thus, even if 10b-5 required Mozido to foreclose on and sell the pledged collateral prior to bringing its suit – which it does not – defendants have, through their actions, prevented Mozido from doing so. Tellingly defendants' motion to dismiss completely ignores this fact despite the repeated references to it in the Amended Complaint. (*See id.* ¶¶ 46, 59, 62-64).

### B.   Mozido Has Properly Alleged Damages

Defendants' ripeness argument also fails because Mozido has properly alleged injury as a result of defendants' misstatements.

---

[2] Defendants' reliance on *Aubrey v. Weihert*, 2016 U.S. Dist. LEXIS 112570 (N.D. Tex. July 28, 2016) is misguided as that action dismissed a deliberate indifference to serious medical needs claim for failure to state a claim under Rule 12(c) and does not discuss the ripeness doctrine. Similarly, *Daniels v. Thaler*, 2009 U.S. Dist. LEXIS 121193 (S.D. Tex. Dec. 30, 2009) does not address the ripeness doctrine, but rather dismisses civil rights claims for failure to state a claim.

[3] "Ordinarily, ripeness appears in case law as a public-law doctrine that permits courts to dispose of a dispute based on considerations such as 'the need to defer to other branches of the federal government; avoidance of unnecessary constitutional decision; comity to state institutions; and statutory severability'" and "these considerations are not in play" in private securities fraud litigation. *Giger v. Ahmann*, 2010 WL 2491025, at *3 (N.D. Ill. June 15, 2010) (internal citation omitted).

Mozido alleges that it "suffered damages in connection with the $6.5 million loan," including the "lost value of the shares pledged as collateral for the loan," payments for "travel costs to China to learn the truth about the extent of defendants' Chinese business relationships," fees in connection with Mozido's due diligence which led to the discovery of the fraud, and fees in connection with Mozido's demands that defendants comply with the terms of the pledge agreement. *(Id.* ¶¶ 60, 73-74). These allegations identify damages which are recoverable under 10b-5 and sufficiently describe Mozido's injury – both out-of-pocket and consequential in nature. *See Borneo Energy Sendirian Berhad v. Sustainable Power Corp.*, 646 F. Supp. 2d 860, 869 (S.D. Tex. 2009) (alleged loss of $1.1 million for stock for a company that was not as represented and services never received properly alleged loss under 10b-5); *Energytec, Inc. v. Proctor*, 516 F. Supp. 2d 660, 673-74 (N.D. Tex. 2007) (consequential damages in 10b-5 claim included attorneys' and other professional fees related to required internal investigation and reporting to SEC).[4]

This action is strikingly similar to *Giger v. Ahmann*, 2010 WL 2491025, at *1-3 (N.D. Ill. June 15, 2010), where the plaintiff filed a Section 10(b) claim relating to an investment, in the form of a loan, and defendants argued plaintiff's claim was "unripe" and that the court lacked subject matter jurisdiction because the investment could be repaid with funds recovered in a second defendant's pending bankruptcy proceedings. The court rejected the defendant's ripeness

---

[4] Defendants' argument that Mozido has not alleged any cognizable loss exceeding the value of its collateral by alleging that defendants' pledged stock is "worthless," and not worth what defendants claimed it was worth (Am. Compl. ¶¶ 45, 59) similarly misses the mark. Defendants rely on cases, including *First Nationwide Bank*, 27 F.3d 763, *Eclectic Prop. East, LLC v. Marcus & Millichap Co.*, 2011 WL 1375164 (N.D. Cal. Apr. 12, 2011), *Campbell v. Conroy*, 55 F. Supp. 3d 750 (W.D. Pa. 2014), and *Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407 (11th Cir. 1989), which are inapposite as they are not binding on this Court and do not pertain to securities fraud allegations. While *Limpos, S.A. v. Aronsno*, 1998 WL 846781 (E.D.N.Y Sept. 15, 1998) and *George v. Cal. Infrastructure & Econ. Dev. Bank*, 2011 WL 837152 (E.D. Cal. Mar. 9, 2011) review securities fraud claims, reliance on these cases is similarly unavailing as they do not concern the sufficiency of damages allegations, but rather the failure to plead with particularity the misrepresentation alleged – something defendants concede has been properly done in this case by failing to allege the contrary – and availability of the fraud-on-the-market presumption of reliance, which is not at issue here.

argument and found it inapplicable to a securities fraud claim given that a securities fraud claim accrues at the time plaintiff acts on a false representation. *Id.* at *3-4. Similarly, this Court should dismiss defendants' ripeness argument under Rule 12(b)(1) as Mozido has alleged that it acted on defendants' false representations and was damaged as a result.[5] Defendants' argument for an extension of case law interpreting RICO to this 10b-5 claim is baseless and, as a result, the Court should deny defendants' motion to dismiss for lack of subject matter jurisdiction.

## II.   DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS SHOULD BE DENIED

Defendants' motion to dismiss Mozido's 10b-5 claim under Rule 12(b)(6) should also be denied because Mozido has properly pled the three challenged elements of its claim – loss causation, due diligence and fraudulent misrepresentations by each defendant.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept as true "all well-pleaded facts" and view them in the light most favorable to plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A claim has facial plausibility where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, the Court's task is not to evaluate the plaintiff's likelihood of

---

[5] Defendants argument (Mot. at 7), that the Uniform Commercial Code § 9.615(d), DEL. CODE ANN. TIT. 6, § 9-615(d), and the pledge agreement § 11(b) support its ripeness challenge is unavailing. UCC § 9.615(d) and § 11(b) of the pledge agreement provide a lender with the right to liquidate "cash" collateral in the event of a default. Here, it is undisputed that defendants provided no cash collateral to Mozido nor the securities which they promised as collateral. To the extent that defendants are asking this Court to decide on the correct measure of damages, and whether Mozido's damages are limited by the pledge agreement or UCC, the Court need not decide the formula at this stage. *See Vantage Trailers, Inc. v. Beall Corp.*, 2008 U.S. Dist. LEXIS 86895, at *6 (S.D. Tex. Oct. 27, 2008) (denying defendant's motion to dismiss argument where it attacked plaintiff's damages calculation and not the claim itself); *Giger*, 2010 WL 2491025, at *3 (finding it too early to decide the correct measure of damages on a motion to dismiss). (*See* Am. Compl. ¶ 64).

success, but rather to determine whether the plaintiff has stated a legally cognizable claim that is plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

The elements of a 10b-5 claim are: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance (or "transaction causation"); (5) economic loss; (6) a causal connection (or "loss causation")[6]; and (7) due diligence. *Dura*, 544 U.S. at 341; *Lormand v. US Unwired*, 565 F.3d 228, 238-39 (5th Cir. 2009); *Stephenson v. Paine Webber Jackson & Curtis, Inc.*, 839 F.2d 1095, 1098 (5th Cir. 1988). Defendants' argument that Mozido has not adequately pleaded a claim under 10b-5 is limited to the elements of loss causation, due diligence, and the claim's application to certain defendants. Because Mozido has properly pled each of these challenged elements, defendants' motion to dismiss should be denied.

**A.    Mozido Has Properly Alleged its Loss Was Caused by Defendants' Material Misrepresentations and the Revelation of Defendants' Fraud**

Mozido has properly pleaded loss causation by alleging that its damages were the direct and proximate cause of defendants' fraudulent misrepresentations – not some external market force – and the truthful revelation of the same.

1.    *Mozido Suffered a Loss*

Mozido pled (Am. Compl. ¶ 59) that it suffered a loss because the securities, at issue, are "worthless" and the defendants are "nearing insolvency" as "evidenced by [defendants'] failure to make any payments" on the $6.5 million loan. *See Carlucci v. Han*, 907 F. Supp. 2d 709, 725 (E.D. Va. 2012) (refusing to dismiss private securities action where plaintiff "cites the non-

---

[6] The Fifth Circuit has never held that transaction causation and loss causation must be pleaded separately in the context of privately-traded securities of a privately-held company.  "In cases involving *publicly traded securities and purchases or sales in public securities markets*, the actions' basic elements are . . . '(4) . . . 'transaction causation'; . . . [and] (6) 'loss causation'[.]"  *Lormand*, 565 F.3d at 238-39 (emphasis added); *see Dura*, 544 U.S. at 341 (requiring pleading loss causation in cases involving publicly traded securities and purchases or sales in public securities market).

payment of [a convertible promissory note], under which [defendant] was obligated to repay . . . as evincing economic loss" and where plaintiff alleged that "'because [defendant's] representations . . . were false, [plaintiff's] investment was worth far less than [the money] he invested' and that the investments are now likely worthless.").  As demonstrated by defendants' failure to locate a single 10b-5 case to support it, Mozido was not, as defendants argue (Mot. at 4-9), required to allege that it was unable to recover its $6.5 million loss after foreclosing on the pledged collateral which defendants refused to provide to it as a condition to properly pleading that it suffered a loss.

### 2.    *Mozido's Loss Was Caused by Defendants*

Mozido properly pleaded loss causation by alleging that defendants' fraudulent misrepresentations, not some external market force, caused Mozido to suffer damages when the truth regarding defendants' misrepresentations was revealed. (Am. Compl. ¶¶ 73-74).

The standard for pleading loss causation in the Fifth Circuit was established in *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009).[7]  To properly plead loss causation, a plaintiff must allege either (1) a facially plausible (a) causal relationship between the fraudulent statement or omission and the economic loss; (b) including allegations of materiality; and (c) a disclosure of the relevant[8] truth that caused a significant part of the depreciation of the stock and plaintiff's economic loss; or (2) enough facts to give rise to a reasonable hope that discovery will reveal evidence of the element of loss causation.  *Lormand*, 565 F.3d. at 258.  In *Dura*, the Court held

---

[7] Plaintiffs in *Lormand* brought a private class action alleging violations of Section 10(b) and 10b-5.  *Lormand*, 565 F.3d at 237.  Plaintiffs alleged that US Unwired concealed the riskiness of various subprime consumer programs it was contractually obligated to provide pursuant to an agreement.  *Id*.  Despite knowing that the strategy may prove to be harmful to business, US Unwired portrayed a positive outlook and these positive misrepresentations caused its stock to artificially inflate until the stock plummeted after public disclosures revealed the truth.  *Id*. at 237-38.

[8] The *Lormand* court expressed that the "relevance" at issue may require something similar to the evidentiary relevance test, i.e., "that the truth disclosed must simply make the existence of the actionable fraud *more probable* than it would be without that alleged fact." *Id*. at n.20. (emphasis added).

that a plaintiff must plead loss causation separate and apart from transaction causation.  *Dura*, 544 U.S. at 345 (2005).  Specifically, the Court held that "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss" and a plaintiff must allege that when the "relevant truth" about the fraud began to leak or make its way into the marketplace, it caused the price of the stock to depreciate and proximately caused the plaintiff's economic loss.  *Id.*

Mozido has properly pleaded its 10b-5 claim.  Specifically, Mozido has alleged "it is more probable than not that defendants' material fraudulent misrepresentations . . . not some external market force . . . caused Mozido to suffer damages when it was revealed that the relevant misrepresentations were untrue."  (Am. Compl. ¶ 74).  Mozido further alleged it was the "truthful revelations [of defendant's fraudulent misconduct that] significantly and directly caused the depreciation of the value of stock pledged as collateral."  (*Id.*); *see generally Dura*, 544 U.S. 336; *and Lormand*, 565 F.3d 228.  Thus, Mozido has pleaded a facially plausible claim by providing defendants with "fair notice of what [Mozido's] claim is and the grounds upon which it rests." *Lormand*, 565 F.3d at 256 (citing *Dura*, 544 U.S. at 346); *Carlucci*, 907 F. Supp. 2d at 726.[9]

### 3.    *The Stock of a Privately-Held Company is at Issue*

Courts treat loss causation differently in cases, such as this, which involve stock of a privately-held company which has no established value in a public market.

Loss causation exists to prevent a plaintiff from recovering damages from the diminution in value of stock where the value was lowered due to external factors, such as market forces.  *See Dura*, 544 U.S. at 345 (clarifying that securities laws are not to provide investors with "broad insurance against market losses," but to protect them against those losses the misrepresentations

---

[9] At the very least, Mozido has properly pled loss causation under *Twombly* because it "clearly presents enough factual allegations (taken as true) to give rise to a reasonable hope or expectation that discovery will lead to evidence that the elements of loss causation existed."  *Id.* at 263.

actually cause). "In non-typical § 10(b) actions, where plaintiff does not simply allege that the price of a publicly-traded security has been affected, the factual predicates of loss causation fall into less of a rigid pattern." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 426 (3rd Cir. 2007). When faced with a non-typical private securities action involving stock of a privately-held company (such as this), courts question the application of, and have refused to apply, the loss causation pleading requirement established in *Dura*. *See Carlucci*, 907 F. Supp. 2d at 725 (discussing uncertainty of applying *Dura* to a non-typical securities fraud claim). Instead, courts find it proper to plead that defendant's misrepresentation was causally related to the losses suffered by plaintiff without the added requirement of distinguishing between losses suffered as a result of market forces. *See Livid Holdings Ltd.*, 416 F.3d at n.2 (finding *Dura* not controlling in a private sale of privately-traded stock where plaintiff asserted that it purchased the security at issue at an artificially inflated price, and defendants' misrepresentation was causally related to the loss).

For example, in *Carlucci v. Han*, a case similar to the present facts, the plaintiff brought a 10b-5 claim based on a privately-held technology company's misrepresentations regarding its business to potential investors. *See generally Carlucci*, 907 F. Supp. 2d at 709. The plaintiff learned the truth about the company's business from a third-party with first-hand knowledge. *Id*. at 718. The court held that the plaintiff adequately pleaded loss causation where the complaint expressly alleged that plaintiff's reliance on defendants' misrepresentations proximately caused the injury and "plaintiff suffered substantial damages and pecuniary loss as a direct and proximate result of the fraudulent conduct of defendants." *Id*. at 724. The court found the allegations that because defendants representations about its business deals were false, plaintiff's investment was "worth far less than [what] he invested and that the investments are now likely worthless." *Id*.

The court also found satisfactory the plaintiff's alleged economic loss in the form of non-payment of a note. *Id*. at 725.

The facts at hand are analogous to *Carlucci* and Mozido has pled its 10b-5 claim with far more specificity than the plaintiff in that case.[10]  First, as in *Carlucci*, Mozido made an investment in Appconomy justifiably relying on fraudulent misrepresentations concerning Appconomy's alleged business relationships and the value derived therefrom.  (*See* Am. Compl. ¶¶ 36-47). Second, Mozido learned of these untruths through Liberty's post-loan meeting with Dr. Liu and Angela Wang. (*Id.* ¶¶ 54-60).  Third, Mozido's investment in Appconomy was worth far less than Mozido invested because the representations about Appconomy's business relationships were false. (*Id.* ¶ 59).  Fourth, Mozido adequately pled loss causation by alleging that all damages were a "foreseeable and proximate result of defendants' wrongful conduct," and it is "more probable than not that defendants' material fraudulent misrepresentations concerning its connections with the Chinese market (among others) and the value derived from those connections – not some external market force – caused Mozido to suffer damages[.]"  (*Id.* ¶ 74).  Finally, like *Carlucci*, Mozido bases its proof of loss on Appconomy's apparent insolvency as shown by its failure to pay any interest or principle on the note.  (*Id.* ¶ 59); *see Carlucci*, 907 F. Supp. 2d at 726 ("Having noted the near-insolvency of Envion, and the non-payment of the [notes], [p]laintiff has identified economic loss substantially attributable to the misrepresentations of [defendant].").

Defendants incorrectly claim (Mot. at 12-13) that *Citibank, N.A. v. K-H Corp.* is instructive.  968 F.2d 1489 (2d Cir. 1992).  Because this case involves a privately-held company, *Citibank*, which involved publicly-traded securities, provides no guidance.  Further, unlike *Citibank*, where the complaint merely alleged transaction causation by asserting "[i]f Citibank had

---

[10] *Carlucci* applied a Rule 9(b) standard for loss causation – a more stringent standard than Rule 8(a)(2) applied by the Fifth Circuit.  *See Carlucci*, 907 F. Supp. 2d at 723-24; *cf. Lormand*, 565 F.3d at 258.

been aware of the agreements between Fruehauf and Stoecker, it would have reacted appropriately," Mozido has alleged both transaction causation and loss causation.  (Am. Compl. ¶¶ 73-74) (asserting that Mozido would not have agreed to the loan had it known the truth and asserting that defendants' misrepresentations caused Mozido to suffer harm).  The court also found that Citibank's losses were the result of an imprudent decision, i.e., intervening market forces caused the value of the securities to be of lesser value than advertised[11]; Mozido however, clearly pleads that defendants' misrepresentations, "not some external market force," caused Mozido to suffer damages.  *Compare id.*; *with Carlucci*, 907 F. Supp. 2d at 726 (finding plaintiff sufficiently pleaded loss causation where it alleged that defendant's repeated misrepresentations induced plaintiff's continued investment, and reliance on those misrepresentations was the proximate cause of the injury); *Livid Holdings*, 416 F.3d at 949 (refusing to dismiss non-typical action where plaintiff alleged the misrepresentation was directly related to the actual economic loss it suffered).

Mozido has pleaded causation with respect to the losses it suffered in accordance with the Fifth Circuit's pleading requirements.  Additionally, because Mozido's 10b-5 claim involves stock of a privately-held company with no public market in which to value said stock, Mozido has properly alleged that it was defendants' fraudulent misrepresentations, not some external market force, which caused Mozido's damages.  Defendants' motion to dismiss should therefore be denied.

---

[11] *See New York Islanders Hockey Club, LLP v. Comerica Bank-Texas*, 71 F. Supp. 2d 108, 117 (E.D.N.Y. 1999) (distinguishing *Citibank* because "Unlike [cases like *Citibank*], where there is a questionable linkage between the defendants' false statements and the plaintiffs' damages due to external events like falling stock prices, there is a clear and direct connection between [defendant's] fraudulent statements and the [plaintiff's] damages."); *Castellano v. Young & Rubicam, Inc*., 257 F.3d 171, 189-90 (2d Cir. 2001) (distinguishing *Citibank* based on clarification that *Citibank* involved intervening market causes); *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 353 (S.D.N.Y. 2010) (distinguishing *Citibank* and stating: "Here, however, [plaintiff's] claim is not that [defendants] induced it to enter into a deal that subsequently went bad.  Instead, [plaintiff] alleges that [defendants] induced it to hand over money that [defendants] used for their own benefit.  Thus, unlike the situation in *Citibank*, here 'the fraud and injury [are] connected; it appear[s] in an appreciable sense that damage flowed from fraud as a proximate and not remote cause.") (internal citations omitted).

### B.   **Mozido Has Properly Pleaded Due Diligence**

Mozido properly pled, contrary to defendants' argument (Mot. at 14-18), that it engaged in due diligence by retaining two prominent national law firms to conduct due diligence in advance of a potential merger, reviewing corporate documents populated to a virtual data room by Appconomy, and issuing follow-up document requests – none of which revealed defendants' fraudulent misrepresentations – before funding the $6.5 million loan and agreeing to accept securities as collateral.  In the Fifth Circuit, whether a 10b-5 plaintiff exercised due diligence is determined by "whether the plaintiff has intentionally refused to investigate in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."  *See Dupuy v. Dupuy*, 551 F.2d 1005, 1020 (5th Cir. 1977); *see also Trust Co. of La. v. N.N.P., Inc.*, 104 F.3d 1478, 1490-91 (5th Cir. 1997) (internal quotation omitted).[12]   Given the federal policy in favor of deterring securities offerors from engaging in intentional misconduct in securities transactions, this standard has been interpreted only to require plaintiffs to avoid "recklessness" in their investment due diligence and this requirement "is not applied stringently."  *Trust Co. of La.*, 104 F.3d at 1491; *Siebel v. Scott*, 725 F.2d 995, 1000 (5th Cir. 1984).  In other words, a 10b-5 plaintiff is not required to make a "reasonable inquiry" into the facts behind a defendant's misrepresentations.  *Longden v. Sunderman*, 737 F. Supp. 968, 973 (N.D. Tex. 1990) (recognizing low "recklessness" burden and stating that "if a personal investigation is required, then what is the use of Rule 10b-5 at all?").  A 10b-5 plaintiff is only required to not disregard known risks, risks so obvious to it that it must have been aware of such risks, or risks so great to make it highly probable that harm would follow.  *See*

---

[12] Defendants misstate the due diligence aspect of a 10b-5 claim by alleging that Mozido did not plead "adequate due diligence" prior to entering into the loan and pledge agreements with Appconomy.  "Adequacy" is not a component of the due diligence analysis, and defendants cite to no case law to support this proposition.  (Mot. at 14).

*Hodges v. H & R Investments, Ltd.*, 668 F. Supp. 545, 553 (N.D. Miss. 1987) (finding due diligence adequately pled where 10b-5 plaintiff alleged only that "[it] did not disregard known risks, risks so obvious to him that he must have been aware of such risks, or risks so great as to make it highly probable that harm would follow.")

Mozido's pleading easily satisfies, and exceeds, the standard for pleading due diligence. Specifically, Mozido pled that it "did not disregard known risks, risks so obvious to it that it must have been aware of such risks, or risks so great as to make it highly probable that harm would follow" in deciding to fund the $6.5 million loan. (Am. Compl. ¶ 72). Further, Mozido pled that, in the four months leading up to the loan it (a) retained two prominent, national law firms to engage in transactional due diligence; (b) obtained access to a virtual data room that was populated with Appconomy's corporate formation documents and financial statements and reviewed those documents with the assistance of counsel; and (c) requested additional documentation from Appconomy consisting of, in part, Appconomy capitalization tables and venture capital loan information and agreements. (*See id.* ¶ 39). And contrary to defendants' argument that reviewing all of these documents should have alerted Mozido to Appconomy's false revenue projections (Mot. at 18), Mozido clearly pled that none of this due diligence revealed defendants' fraudulent misrepresentations that induced Mozido into loaning money to Appconomy. (*See* Am. Compl. ¶ 39); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (stating all well-pleaded facts must be taken as true and construed in light most favorable to plaintiff on motion to dismiss).

Even though defendants admit Mozido engaged in this pre-loan due diligence, defendants argue (Mot. at 9, 17-18) Mozido did not engage in the *right kind* of diligence. Defendants contend that Mozido would have uncovered their fraud if it had simply hopped on a plane, flown halfway around the world to China, and participated in a series of meetings with defendants' purported

16

Chinese business contacts.  (*See id.* at 16).  However, defendants have not – and cannot – cite to any authority which would allow this Court to make such a factual determination on a motion to dismiss.  *See Greenwald v. Integrated Energy, Inc.*, 102 F.R.D. 65, 70 (S.D. Tex. 1984) (recognizing that in 10b-5 cases discussing whether a plaintiff engaged in due diligence, courts have "consistently preserved this question for the jury.").[13]  And, in any event, Mozido was under no obligation to engage in any more due diligence than it did.  *See Dupuy*, 551 F.2d at 1023 ("Even the cases that have required plaintiffs to refrain from negligent, rather than reckless, behavior have never required a plaintiff to launch an investigation of sources of information outside the corporation, its officers, directors, and books.").  Stated simply, Mozido has properly alleged due diligence and defendants' motion to dismiss should be denied.

### C.    Mozido Has Properly Pleaded Securities Fraud Against All Defendants

Mozido has pled a 10b-5 claim against all defendants by alleging that Papermaster and Magierski were acting in their scope as employees, directors, representatives, and/or agents controlled by and with authority to act on behalf of and bind all defendants when the relevant misrepresentations were made.

A 10b-5 claim against a corporate entity may survive a motion to dismiss if it is alleged that a corporate officer made fraudulent statements with requisite scienter on behalf of, and in the course of his or her employment with the corporate entity.  *Southland Secs. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 365-66, 380 (5th Cir. 2004).  It is axiomatic that when determining whether a corporate defendant made fraudulent statements and acted with the requisite scienter, courts look to "the state of mind of the individual corporate official or officials who make or issue

---

[13] Defendants' reliance on *Stephenson*, 839 F.2d at 1098 to argue that Mozido should have discovered their fraud because it is "sophisticated" similarly misses the mark.  Mozido is an industry leader in the mobile payment *technology* space, not in the *financial* community as a whole, and there is nothing in Mozido's Amended Complaint to provide factual support to the contrary.

the statement[.]"  *Southland*, 365 F.3d at 366.  Defendants do not dispute this and, in fact, admit that "a 10b-5 claim against a corporate entity may survive a motion to dismiss if it is evident from the facts pled on the face of the complaint that the officer was acting in the course of his or her employment."  (Mot. at 19) (emphasis removed).

Mozido exceeds this standard by pleading that: (a) Papermaster and Magierski are the principal owners and executive officers of Appconomy (Am. Compl. ¶ 25); (b) Papermaster and Magierski were agents of and/or controlled 10X Capital and the trusts.  (*Id.* ¶ 46); (c) "[a]t all relevant times, Papermaster and Magierski presented themselves as employees, directors, officers, representatives, and/or agents of Appconomy, as authorized by Appconomy to engage in negotiations with Mozido and bind Appconomy,"  (*Id.* ¶ 24); and (d) each statement made by Papermaster and Magierski was made on behalf of and in furtherance of the interests of the Appconomy entities, 10X Capital, and the trusts.  (*Id.* ¶¶ 32, 35, 38, 40, 43).  Defendants' only response (Mot. at 19-20), which challenges the factual basis of Mozido's allegations, is unavailing as the Court must accept Mozido's allegations as true in deciding the instant Motion.

In *Lee v. Active Power, Inc.*, 39 F. Supp. 3d 876 (W.D. Tex. 2014), Judge Sparks found that a high-level employee's fraudulent statements and scienter could be imputed to his employer because the employee was (1) a high-level employee; (2) acting within the scope of his employment; and (3) authorized to act on behalf of his employer.  *Id*. at 882.  Like *Lee*, Mozido has pleaded that "[a]t all relevant times, Papermaster and Magierski presented themselves as employees, directors, officers, representatives, and/or agents of Appconomy, as authorized by Appconomy to engage in negotiations with Mozido and bind Appconomy."  (Am. Compl. ¶ 24).

Contrary to defendants' argument that Mozido made these assertions in a conclusory manner and did not allege what capacity Papermaster and Magierski were acting in (Mot. at 20),

Mozido specifically alleged that "Papermaster and Magierski . . . are the principal owners [of Appconomy], and . . . are executive officers, of Appconomy," (Am. Compl. ¶ 25) and that Papermaster and Magierski are agents of and/or controlled 10X Capital and the trusts. (*Id.* ¶ 46). Additionally, defendants contend that Mozido did not plead "what role each entity had at the time the alleged misrepresentations were made," yet defendants cite no authority to support this pleading requirement with respect to corporate entities. (Mot. at 20); *cf. Southland*, 365 F.3d at 364 (discussing the need to identify the role of *individual defendants* in imputing the individual defendant's statement and scienter to a corporate defendant). Nevertheless, it is clear from Mozido's Amended Complaint that Papermaster and Magierski were acting on behalf of and in furtherance of the defendants during the course of negotiations for the acquisition of Appconomy. (Am. Compl. ¶¶ 32, 35, 38, 40, 43). Furthermore, defendants contend that Mozido did not assert what each particular entity purportedly obtained or stood to obtain (Mot. at 20), yet Mozido has clearly alleged that Appconomy obtained $6.5 million as a result of its malfeasance, which further benefited Papermaster, Magierski, 10X Capital, and the trusts as stock owners. (Am. Compl. ¶ 46, 60). Moreover, Mozido specified that each statement made by Papermaster and Magierski was made on behalf of and in furtherance of the interests of all defendants. (*Id.* ¶¶ 32, 35, 38, 40, 43).

Indeed, defendants have conceded that Papermaster and Magierski were acting on behalf of Appconomy-US, Inc. (Dkt. No. 7. at 17) ("[I]f Papermaster and Magierski were acting in any capacity other than in their individual capacities, it logically would have been on behalf of Appconomy-US."). Mozido has properly pled that Papermaster and Magierski made fraudulent statements with the requisite scienter which are imputed to all defendants by way of respondeat superior. *See Southland*, 365 F.3d at 383 (finding corporation liable for employee's fraudulent

statement on basis of respondeat superior liability).  Defendants' Motion to dismiss should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants' 12(b)(1) and 12(b)(6) motion to dismiss the Amended Complaint should be denied.

Dated:  October 17, 2016
        Houston, Texas

Respectfully submitted,

By:  <u>/s/ Constantine Z. Pamphilis</u>
    Constantine Z. Pamphilis
    State Bar No. 00794419
    DPamphilis@kasowitz.com
    Micah A. Grodin
    State Bar No. 24080505
    MGrodin@kasowitz.com
    KASOWITZ, BENSON, TORRES
      & FRIEDMAN LLP
    700 Louisiana Street, Suite 2200
    Houston, Texas 77002-2730
    Telephone: (713) 220-8800
    Fax: (713) 222-0843

    *Attorneys for Plaintiff Mozido, Inc.*

20

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of October, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification to the following:

Alan S. Loewinsohn
Jim L. Flegle
Kerry Schonwald
LOEWINSOHN FLEGLE DEARY SIMON LLP
12377 Merit Drive, Suite 900
Dallas, Texas 75251
Telephone: (214) 572-1700
Fax: (214) 572-1717

/s/ Constantine Z. Pamphilis
Constantine Z. Pamphilis